IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| JOHN MATTHEW CREEL, as the Personal Representative of the Estate of Joshua Matthew Creel, on behalf of the heirs of Joshua Matthew Creel,<br><br>Plaintiff,<br><br>vs.<br><br>MARK B. LOY, ACTIVE TRUCK TRANSPORT, LLC d/b/a ACTIVE USA, LLC and DOES 1-10,<br><br>Defendants. | CV 20–79–M–DWM<br><br><br>OPINION<br>and ORDER |

This case arises out of a motor vehicle accident that occurred in June 2017 on Interstate 90 east of Clinton, Montana.  At approximately 10:10 a.m., Deborah Alteneder was driving a Chevrolet Impala eastbound on I-90 with Josh Creel, her fiancé, in the passenger seat.  (Doc. 23 at ¶ 3(g).)  It was raining and Alteneder lost control of the vehicle, sliding through the 38-foot median and onto the westbound lane of the interstate.  (*Id.* at ¶¶ 3(i), (j).)  The Impala collided with a 2018 Kenworth T800 truck operated by Defendant Mark Loy and owned by Defendant Active Truck Transport, LLC ("Active") (collectively "Defendants").  (*Id.* at ¶¶ 3(d), (e), (h), (j).)  Both Creel and Alteneder died at the scene.  (*Id.* at ¶ 3(k).)

1

On June 1, 2020, Plaintiff John Matthew Creel ("Plaintiff") sued Defendants as the personal representative of Josh Creel's estate, alleging negligence, wrongful death, survivorship, and loss of consortium. (Doc. 1.) These allegations focus primarily on Loy's speed at the time of the accident, which was recorded at 67 to 70 miles per hour just prior to the crash. (Doc. 28 at Addt'l ¶ 3.) Defendants seek summary judgment on the grounds that Loy's alleged negligence did not cause the accident and that Alteneder's conduct severed the chain of causation. (Doc. 24.) That motion is granted.

## ANALYSIS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Negligence is the failure to use the degree of care that an ordinary person would have used under the same circumstance." *Barr v. Great Falls Int'l Airport Auth.*, 107 P.3d 471, 477 (Mont. 2005). "To maintain an action in negligence, a plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted." *Peterson v. Eichhorn*, 189 P.3d 615, 620–21 (Mont. 2008). Summary judgment dismissing a claim of negligence is appropriate if the party advancing the claim fails to establish one of the four elements. *Hagen v.*

*Dow Chem. Co.*, 863 P.2d 413, 416 (Mont. 1993).  However, "[n]egligence actions usually involve questions of fact regarding breach of a duty and causation; as a result, they are not ordinarily susceptible to summary judgment and are usually better resolved at trial." *Craig v. Schell*, 975 P.2d 820, 822 (Mont. 1999).  "A question of fact in a negligence case may be determined as a matter of law only where reasonable minds could reach but one conclusion as to whether a duty was breached or whether a breach of a duty caused an accident." *Id.* at 822–23.

Here, Defendants focus on causation, arguing that Loy's speed was irrelevant because Alteneder lost control and entered Loy's lane, making Alteneder's negligence "the direct and only cause of the crash." (Doc. 25 at 4.)  In response, Plaintiff maintains that Loy exceeded the appropriate speed and could have otherwise avoided the accident, relying primarily on the analysis and conclusions of Lew Grill, an expert in commercial trucking.  (*See* Doc. 28-1 (Dec. 23, 2020 Report).)   Based on the current record, reasonable minds could reach but one conclusion: Defendants' alleged negligence did not cause the accident.

## I.    Factual Background

The facts are undisputed unless otherwise noted.  (*See* Docs. 23, 26, 28.) Disputed facts are viewed in the light most favorable to Plaintiff, the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).  There are three primary sources for the facts here: (1) the Montana Highway Patrol report; (2) the

3

deceleration report from Loy's vehicle; (3) and Grill's expert report.  Defendants

primarily rely on the Highway Patrol report in seeking summary judgment.  (*See*

Doc. 28-3.)[1]  Because that report supports the argument that Loy's conduct did not

contribute to the accident, Plaintiff relies on the deceleration report and Grill.

Neither is sufficient, however, to raise a genuine dispute of material fact.

### A.    Montana Highway Patrol Report

According to the Montana Highway Patrol report, it was 50 degrees

Fahrenheit and rainy at the time of the accident.  (*Id.* at 6.)  Alteneder and Creel

were in Alteneder's Impala headed from Missoula to Butte to visit Alteneder's

sister.  (*Id.* at 11.)  Loy was headed from Miles City to Spokane, driving a

semitruck and hauling another semitruck for his employer, Active.  (*Id.*)  The

Impala was headed east on I-90 near mile marker 135.8.  (*Id.*)  It negotiated a left

curve before entering a "straight, level portion of Interstate 90."  (*Id.*)  Loy was

traveling west and in the left lane as he was attempting to pass a semitruck driven

by Carl Booth.  (*Id.* at 7, 11.)  Road conditions were wet and there were ruts that

allowed for standing water in both the eastbound and westbound lanes.  (*Id.* at 6.)

However, the "road [wa]s straight and level on both the east and west directions of

travel" and the eastbound and westbound lanes were separated by a grassy,

---

[1] Defendants assert that this report is "attached" to their statement of undisputed facts.  (Doc. 26 at ¶ 12.)  It is not.  However, the report was provided by Plaintiff in his response.  (*See* Doc. 28-3.)

unprotected median approximately 38-feet wide.  (*Id.*)  The speed limit was 80

miles per hour for vehicles and 65 miles per hour for trucks.  (*Id.*)

Though it is somewhat unclear, the report indicates that "Alteneder lost

control of the Impala, overcorrected steering to the left, and began sliding

counterclockwise towards the median."  (*Id.* at 11.)  She spun through the median

and ultimately entered the left, westbound lane into the oncoming traffic.  (*Id.*)

The front of Loy's truck struck the driver's side of the Impala, with the force of the

collision pushing Alteneder into the passenger side of the Impala.  (*Id.*)  Alteneder

and Creel were both pronounced dead at the scene.  (*Id.* at 8.)

There were only two surviving witnesses to the crash: Loy and Booth.  (*See*

*id.* at 9.)  Booth "observed the Impala lose control" and stated that "it appeared

they were traveling 'fast.'"  (*Id.*)  "Mr. Booth said the sedan started turning when

the front tire came off the roadway [and] the tail spun around."  (*Id.*)  He further

stated that "[t]he Impala traveled through the center median, was airborne at one

point, entered the westbound lane and was struck by [Loy's truck]."  (*Id.*)  Loy said

that he "saw the red eastbound vehicle lose control observing the back-end slide to

the right.  Mr. Loy believed the sedan was in the right lane and may have started

traveling off the south side of the Interstate before over-correcting and sliding

through the median.  Mr. Loy said that it happened very fast."  (*Id.*)

The first officer was on the scene within fifteen minutes, (*id.* at 6), and the crash was cleared five hours later, (*id.* at 8).  Officers observed that "[t]he Impala sustained significant damage to the driver's side of the vehicle." (*Id.* at 7.)  The truck "sustained damage to the front fenders, headlights, and grill.  A tow hitch on the front of the [truck] had red paint transfer; which matched up to a hole in the driver's door of the Impala." (*Id.* at 8.)  However, the rain made it difficult to mark the scene, (*id.* at 7), and the officers were only able to complete a portion of the Total Station measurements on the day of the accident, (*id.* at 8, 22).  The Impala was also too damaged to download the vehicle's crash data.  (*Id.* at 8, 23.)  A Total Station was completed, however, based on further measurements taken the next day.  (*See id.* at 14, 22.)

Ultimately, the Highway Patrol attributed all fault for the accident to Alteneder.  The report states that Loy was not distracted, his vision was not obscured, and he provided "no contributing action." (*Id.* at 4.)  It further states that neither Alteneder nor Loy had any drugs or alcohol in their systems.  (*Id.* at 10.)  It then concludes:

> The major contributing factors of this crash are driving too fast for conditions, and excessive steering input.  The ruts in the eastbound lanes allowed for pooling water.  The tread depth on the tires of the Impala were above the wear bar, however three out of the four tires measured just 4/32; the fourth tire was measured at 8/32.  The combination of tread depth, water on the roadway and the vehicles [sic] speed exceeded the driver's ability to maintain control.  When control

6

was lost, the driver's input caused the sedan to cross the median into
the path of oncoming traffic.

(*Id.* at 12.)

## B.   Deceleration Report

According to the crash data downloaded from Loy's truck, he was traveling

approximately 67 to 70 miles per hour at the time of the accident and did not

engage his brakes until one second before impact.  (Doc. 28-4 at 5.)

## C.   Grill Report

Plaintiff retained Grill to review the crash information and present

opinions—as an expert in commercial trucking—about industry customs, practices,

and standards; the operation of the semitruck in this case; the duties of the motor

carrier; and the preventability of this accident "from a commercial trucking

industry standpoint."  (Doc. 28-1 at 5.)  His report is divided into four basic

sections.  First, Grill outlines the industry regulation and standards applicable to

commercial vehicles.  (*Id.* at 10–16.)  While he argues commercial vehicle

operation requires a higher degree of safe driving performance and defensive

driving, he recognizes "[t]he standard of care for truck drivers is the same as for

every road user, in the respect that the truck must be operated in a manner that

avoids crashing into things, or having others collide with it."  (*Id.* at 11.)  Second,

Grill opines that Active (the owner of the truck and Loy's employer) had a duty to

ensure its drivers operate in compliance with the applicable safety regulations and

"effectively implement and use safety management systems that would likely

prevent such a collision from occurring." (*Id.* at 16–18.)

Third, Grill provides the following five opinions related to Loy:

A. Defendant Loy knew, or should have known, all of the information in the CDL Manual that is expected of any well-trained, prudent, safe, defensive [commercial motor vehicle] operator.

B. Defendant Loy had a duty to keep a proper lookout in order to perceive hazards in front of him.

C. Defendant Loy had a duty to adhere to industry safe driving standards and practices as it relates to speed and space management.

D. Defendant Loy had a duty to properly recognize, prepare for, and respond to the hazards around him.

E. Defendant Loy failed to adhere to industry safe driving standards and practices as it relates to driving in adverse weather conditions.

(*Id.* at 19–24.)  Finally, Grill opines on "accident preventability," concluding that

"Defendant Loy caused his own preventable collision." (*Id.* at 24.)  In summary:

1. Defendant Loy was required to have the necessary knowledge, skills, and safe driving attitude to prevent causing a collision.

2. Defendant Loy had a duty to apply defensive driving concepts like The Smith System.

3. Defendant Loy had a duty to adhere to industry regulations and standards in at least the following ways:
      a. Duty to use proper visual search methods and keep a lookout for hazards;
      b. Duty to safely manage speed and space between his vehicle and others;
      c. Duty to recognize hazards and potential conflicts;

    d.  Duty to operate with due caution as it relates to driving in adverse weather conditions.

4.  If Defendant Loy operated at a safe and reasonable speed he would have had the time and opportunity to see the hazards in front of him.

5.  Defendant Loy knowingly operated at a speed that would not allow him to stop within his sight distance.

6.  Active USA is responsible for the actions of Defendant Loy as it relates to the safe operation of a [commercial motor vehicle].

7.  According to industry standards, this collision was preventable on the part of Active USA and their driver Defendant Loy.

(*Id.* at 29.)

## II.    Discussion

While Plaintiff shows that Loy's speed and operation of his truck may have increased the risk of harm to other individuals on the highway, he presents no evidence that those conditions caused this accident.  The analysis is somewhat complicated, however, by the fact that as the passenger, no fault is attributable to Creel himself.  Thus, comparative negligence plays no role.  *See Faulconbridge v. State*, 142 P.3d 777, 795 (Mont. 2006) ("[A] driver's negligence cannot be imputed to a passenger for the purpose of comparative negligence.").  Even so, Plaintiff fails to raise a genuine issue of fact that Loy's alleged negligence contributed to the accident or that Loy should have reasonably anticipated Alteneder's conduct. Summary judgment is therefore appropriate.

A.    **Duty**

"The existence of a legal duty is a question of law to be determined by the

court." *Fisher v. Swift Transp. Co., Inc.*, 181 P.3d 601, 607 (Mont. 2008).  "At the

most basic level, we all share the common law duty to exercise the level of care

that a reasonable and prudent person would under the same circumstances." *Id.* at

606.  But Montana imposes specific duties of care for motor vehicle operators.

Drivers have a duty to drive "in a careful and prudent manner that does not unduly

or unreasonably endanger the life, limb, property, or other rights of person entitled

to use the highway." Mont. Code Ann. § 61–8–302.  Drivers also must abide by

the posted speed limit and "operate a vehicle in a careful and prudent manner and

at a reduced rate of speed no greater than is reasonable and prudent under the

conditions existing at the point of operation, taking into account the amount and

character of traffic, visibility, weather, and roadway conditions."  Mont. Code Ann.

§ 61–8–303(3); *see also* Mont. Code Ann. § 61–8–312 (trucks).

Montana courts have also addressed unexpected obstacles in the motor

vehicle context, determining that drivers "must anticipate" hazards such as

wildlife, chuckholes, and black ice.  *Craig*, 975 P.2d at 332.  They have been

reluctant, however, to extend the duty of care to include anticipation of the

negligent acts of others: "Although a driver has a duty to keep a proper lookout and

take reasonable steps to avoid a collision, a driver does not have a duty to

10

anticipate injury which comes about only as the result of the negligence of another."[2] *Anderson v. Werner Enters., Inc.*, 972 P.2d 806, 814 (Mont. 1998). This is because the existence of a duty turns primarily on the foreseeability of resulting injury. *Fisher*, 181 P.3d at 607.  The relevant inquiry is "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Id.* (internal quotation marks omitted).  "A plaintiff is a foreseeable plaintiff if she or he is within the 'foreseeable zone of risk' created by the defendant's negligent act." *Id.*  In the driving context, "[t]he zone of risk created by a negligent driver necessarily includes other drivers and passengers in his immediate vicinity." *Id.* at 608.

While the facts of this case stretch the "zone of risk" to its logical limit, Loy owed other motorists a duty to operate his vehicle in a "careful and prudent manner and at a reduced rate of speed no greater than is reasonable and prudent under the conditions." *See* § 61–8–303(3).  Similarly, Active owed a duty as the owner of the truck and Loy's employer to maintain the vehicle and ensure the driver had proper training and licensing.

---

[2] Defendants argue in their reply, "As in *Anderson*, Loy had no duty to anticipate injury to Plaintiff or Alteneder because the injuries only came about because of Alteneder's negligence under adverse road conditions."  (Doc. 29 at 5.)  This is the first time Defendants make a duty argument and it appears to be made in the context of causation.

**B.      Breach and Causation**

"Under a negligence per se theory, a person's breach of duty is established

as a matter of law, generally through a statutory violation." *Wenger v. State Farm*

*Mut. Auto. Ins. Co.*, ___ P.3d ___, 2021 WL 567396, at ¶ 13 (Mont. Feb. 16,

2021).  However, "[t]he plaintiff still must prove causation and damages." *Id.*

Defendants' primary argument is that even assuming Loy exceeded the posted

speed limit and therefore breached both his statutory and common law duties, his

speed did not cause the accident.  Rather, according to Defendants, Alteneder's

negligence was the sole cause.  In response, Plaintiff argues that Loy has presented

no evidence that speed was not a factor and, to the contrary, Plaintiff's expert will

opine that if Loy had been operating at a safe and reasonable speed "this crash

would not have happened."  (Doc. 28-1 at 28.)  But Plaintiff's evidence speaks to

duty and breach, not causation.  While Plaintiff has presented sufficient evidence

to raise a genuine issue of fact as to the former, he has not as to the latter.

**1.      Breach**

Plaintiff presents evidence that Loy exceeded the posted speed limit by 2 to

5 miles per hour at the time of impact.  He was apparently traveling 67 to 70 miles

per hour, (*see* Doc. 28-4 at 5), and the posted limit was 65 mph, (*see* Doc. 28-3 at

6).  Loy therefore breached his statutory duty not to exceed the posted limit.

Plaintiff further argues that Loy exceeded the appropriate speed for the wet and

rainy road conditions, which is governed by a "reasonable and prudent" person standard. *See* § 61–8–303(3). Plaintiff insists that Loy, as a commercial trucker, should have reduced his speed by one-third. (Doc. 28, Addt'l ¶ 10.) In support of this argument, Plaintiff relies on Grill's analysis and conclusions. (*See* Doc. 28-1.) According to Grill, Loy should have been traveling slower given the wet road conditions, as speed and road conditions affect sight lines and stopping distance. (*Id.* at 22.) He further opines that Loy should not have undertaken to pass Booth. (*Id.* at 24.) Considering the wet and rainy road conditions, this is sufficient to raise a genuine dispute of whether Loy breached his duty of care.

Nevertheless, Plaintiff fails to raise a genuine issue as to whether Active breached its duty of care. While Grill opines that Active had a duty to ensure that its drivers were aware of regulations and operated in compliance with them, (*id.* at 16–18), there is no evidence in the record that Active failed to so here. Similarly, there is no evidence that Loy was not properly trained or was unaware of the CDL Manual. Grill simply outlines the regulations without connecting them to Defendants. As a result, Plaintiff fails to raise a genuine dispute as to Active for its own negligence or as to Loy for lack of training.

## 2. Causation

That leaves the causation question as it relates to Loy's operation of the truck. "A defendant's negligence is the direct cause of the plaintiff's injury if there

is an uninterrupted chain of events from the negligent act to the plaintiff's injury."

*Fisher*, 181 P.3d at 609.  In such cases "proof of causation is satisfied by proof that

a party's conduct was a cause-in-fact of the damage alleged." *Busta v. Columbus*

*Hosp. Corp.*, 916 P.2d 122, 139 (Mont. 1996).  A party's act is the cause-in-fact of

an event if "the event would not have occurred but for that conduct." *Id.* (citation

omitted).  "However, when the case involves an intervening cause, the analysis

becomes more complicated." *Fisher*, 181 P.3d at 609.  "An intervening cause is a

force that comes into motion after the defendant's negligent act, and combines with

the negligent act to cause injury to the plaintiff." *Id.*  "[W]here there is an

allegation of an independent intervening cause[,]" the defendant's conduct is the

cause of an injury "if, in a natural and continuous sequence, it helped produce it

and if the [injury] would not have occurred without it." *Busta*, 916 P.2d at 139

(internal quotation marks omitted).  This causal analysis is two-tiered; first, the

Court must consider "whether the defendant's negligent act was a cause-in-fact of

the plaintiff's injury" and second, the Court must consider "whether the

defendant's act was a proximate cause of the plaintiff's injury." *Fisher*, 181 P.3d

at 609.

### a.    Cause-in-fact

While Defendants cannot dispute that the impact of Loy's truck resulted in

Alteneder and Creel's deaths, they dispute that Loy's speed or lack of vigilance

14

(i.e., his alleged negligent conduct) played a role.  They persuasively argue that Plaintiff fails to show that but-for Loy's allegedly negligent conduct, the accident would not have occurred.

Grill states that Loy had a duty to "keep a proper lookout in order to perceive hazards in front of him," and recommends that drivers "look at least 12 to 15 seconds ahead." (Doc. 28-1 at 20.)  Similarly, he states that drivers need to prepare for hazards, specifically potential areas for "conflict," such as intersections, merges, slow traffic, and accident scenes.   (*Id.* at 23.)  But nowhere in his report—nor in the Highway Patrol report—does it indicate that Loy's sight lines were obstructed or that he could not stop within that distance.  To the contrary, the Highway Patrol report states that the stretch of road at issue was straight and level.  (Doc. 28-3 at 6.)  And, in Loy's statements to law enforcement following the accident he said he saw the Impala traveling on the other side of the median and observed Alteneder lose control.  (*Id.* at 9.)  Accordingly, there is no evidence supporting Plaintiff's assertion that Loy failed to keep a proper lookout or take reasonable steps to avoid "conflict."  While Loy was apparently legally passing Booth at the time, neither Plaintiff nor Grill present any evidence as to Booth's speed.  Although Grill states that passing on wet roads should only be done when "necessary," (Doc. 28-1 at 24), he provides no other context for that

assessment.  Thus, while speed and road conditions *could* affect sight lines leading to injury, there is no evidence they did so here.

The same holds for Grill's opinions on braking distance and impact damage. Grill states that higher speeds "greatly increase the severity of crashes and stopping distances." (*Id.* at 22.)  He indicates that a speed of 60 miles per hour can result in an impact and breaking distance nine times greater than a speed of 20 miles per hour. (*Id.*)  He further states that wet roads can double the braking distance. (*Id.*) He therefore recommends that drivers on wet roads reduce their speed by one-third. (*Id.*)  But these statements and generic measurements similarly lack a nexus to the facts here.  Grill does not discuss the length of Loy's stopping distance in fact or compare it to a reasonable stopping distance.  Nor does Grill posit on the variable damage to the Impala or Creel's injuries.  Rather, the evidence presented by Plaintiff relates to whether Loy breached a duty owed to Creel; it does not establish a causal link between the alleged breaches of duty and the harm. *See Butts v. Weisz*, 2010 WL 703238, at *6 (W.D. Penn. Feb. 25, 2010) (discussing this distinction in the context of a fall down a stairway).  Grill's conclusions are generic at best: slower, safer driving prevents accidents.  But his opinion that Loy could, and should, have avoided the accident all together is merely speculation.

Ultimately, Plaintiff fails to present any evidence that shows a change in Loy's speed or operation of the truck would have altered the outcome.  Plaintiff

has therefore failed to "offer substantial evidence of one of the essential elements of his negligence claim," making summary judgment appropriate.[3]  *Not Afraid v. State*, 362 P.3d 71, 76 (Mont. 2015).

### b.    Proximate Cause

But even if Plaintiff successfully raised a genuine dispute as to cause-in-fact, proximate cause forecloses recovery.  Defendants argue Alteneder was negligent per se in entering Loy's lane and that her actions constitute an independent, intervening cause that severed the chain of causation.  *See* Mont. Code Ann. § 61–8–321.  They are correct.

"To establish proximate cause, the plaintiff must show that it was the defendant's breach which foreseeably and substantially caused his injury."  *Fisher*, 181 P.3d at 609 (internal quotation marks omitted).  Though foreseeability is generally limited to the duty context, "where a dispute presents the issue of an intervening act of a third party . . . [courts] address foreseeability in the proximate cause context as well."  *Id.* (internal quotation marks omitted).  The Montana

---

[3] Defendants also rely heavily on Judge Best's decision in *Paulson v. Nordrum*, BDV-16-0977 (June 27, 2017).  (*See* Doc. 25-1.)  As argued by Plaintiff, that case is distinguishable as it involved the comparative liability of the two drivers as opposed to a no-fault passenger.  However, Judge Best similarly emphasized that the plaintiff was driving in his lane at the time of the impact and, even if he was speeding, it was the defendant entering his lane that "caused" the accident.

Supreme Court has recognized, however, that "not all intervening acts are independent. Those that are foreseeable do not breach the chain of causation." *Id.* (internal quotation marks omitted). "The foreseeability inquiry is the same one employed in the duty context," i.e. "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff. The specific injury . . . need not be foreseen." *Id.* at 609–10 (internal quotation marks and citation omitted). Ultimately, "a defendant's liability for his wrongful act will not be severed by the intervening act of a third party if the intervening act is one that the defendant might reasonably foresee as probable or one that defendant might reasonably anticipate under the circumstances." *Id.* at 610 (internal quotation marks omitted). Foreseeability is generally a jury question and may be resolved on summary judgment only "where reasonable minds may reach but one conclusion." *Id.*

Certainly, reasonable minds could foresee that speeding on a wet road surface could result in an accident. And, rainy conditions may impair a driver's ability to see obstacles or control his vehicle. But the intervening cause here (Alteneder losing control of the Impala and crossing the median) was not the foreseeable result of Loy's alleged negligence (Loy allegedly traveling too fast for road conditions). *Compare Cusenbary v. Mortensen*, 987 P.2d 351, 356 (Mont. 1999) *with Strever v. Cline*, 924 P.2d 666, 674 (Mont. 1996). Because Loy could

18

not reasonably anticipate Alteneder's conduct, it broke the chain of causation.

Reasonable minds could therefore reach but one conclusion: Creel's injuries were

not foreseeably and substantially caused by Loy's alleged negligence.  Thus,

summary judgment is also appropriate on these grounds.

## CONCLUSION

Accordingly, IT IS ORDERED that Defendants' motion for summary

judgment (Doc. 24) is GRANTED.  The Clerk is directed to enter judgment consist

with the above and close the case.

DATED this 10th day of March, 2021.

Donald W. Molloy, District Judge
United States District Court